## KELLOGG *a.* TOTTEN.

*Supreme Court, Second District; General Term, Sept.,* 1858.

SALE OF GOOD-WILL.—ATTACHMENT BY ADVICE OF SELLER.—IM-
PROPER EVIDENCE.

A transfer by a retiring partner to the other, of "the business connections and
patronage belonging to the firm," may be deemed to include the goods of the
concern.

A retiring partner, who transfers the good-will of the business to his copartner,
does not violate his consequent obligations to the latter by advising a creditor
to attach the property.

Where, in an action in which the purchaser of the good-will sought to recover
damages caused by an attachment levied by the advice of the seller, the judge,
though ruling that it was no breach of the contract, admitted evidence of the
attachment, and it formed an element in the damages ;—*Held,* that the ver-
dict should be set aside.

Appeal from a judgment.

This action was brought by Charles G. Kellogg against
Ephraim J. Totten, on articles of agreement for dissolution of
partnership. The complaint was as follows :—

[*Title of the cause.*]

" Charles G. Kellogg, of the city of Brooklyn, complaining
by A. H. Dana, his attorney, against Ephraim J. Totten, of
Richmond county, showeth to the court that the plaintiff and
defendant were, in the month of February, 1852, in mercantile
business as commission merchants and general jobbers at San
Francisco, in California, under the firm-name of Totten & Kel-
logg, and had been so for a considerable time previous, viz. :—
the period of about a year and three months.

" Plaintiff further saith, that their business at the time above
mentioned was supposed by him to be promising, although it
had not yielded a large profit, and that a proposition having
been made about that time, by defendant, to plaintiff, to sell
out his partnership interest, it was finally, with some modifica-
tion, accepted by the plaintiff.

" He further saith, that the said defendant Totten had not at that time any capital in the concern other than his equal partnership interest—all the capital originally put in by him having been drawn out at the time of the agreement to dissolve.

" He further saith, that the basis of the proposition, and the inducement to plaintiff to accept, was the value of the business done by said firm, with or for certain customers and certain business connections and acquaintances, not the property actually on hand; that one of the principal customers was John Johnson, of the city of New York, whose business had been brought to the concern by Totten, and of which defendant claimed to have, and plaintiff believed he had, control. That he was, in fact, the general agent of said Johnson, having a power of attorney from him for the transaction of all his business in California. That said Johnson had consigned largely to the firm, and that some part of the goods had been sold upon a credit not yet expired, and a portion of the goods remained on hand.

" That by the terms of the agreement entered into between plaintiff and defendant, all the partnership interest of defendant was sold out to plaintiff for the sum of $4,000. All the property of the partnership was transferred to plaintiff, together with the business of the late firm, plaintiff to pay all the debts of the firm—what was due in San Francisco by the 1st of March then next, and the foreign indebtedness by the 1st of June following; and it was expressly understood and agreed, that as respected any indebtedness to said Johnson, plaintiff was to have till the 1st of July to pay it, and defendant then stated he had a power of attorney from said Johnson by which he had power to make such agreement, and that it would be binding upon his principal, and at the same time the said defendant took possession of and assumed the control of the goods of said Johnson still remaining unsold; the said defendant further undertook to secure for plaintiff the business of said Johnson, and to aid him generally in keeping all the customers that said defendant Totten had brought there, and maintaining the credit of the concern.

" Plaintiff further saith, that he complied with the conditions of this agreement, by paying defendant Totten the sum of $4,000, and paying all the indebtedness of the firm in San Fran-

cisco within the period specified; that he also made prepara-
tions for the payment of the foreign indebtedness, and would
have discharged the same without any difficulty within the
time prescribed. That the said defendant remained as clerk of
plaintiff in the store, where the partnership had been conducted,
at a salary of $200 a month, up to the 28th of May following,
to which time he was paid his salary in full, and quit plaintiff's
employment, with no intimation of any different understanding
or intention than what had been agreed as above set forth ; and
the plaintiff was at that time doing a prosperous business, and
had the confidence of his customers. That before the time de-
fendant left plaintiff's employment, a part of the goods which
were on hand, at the time of the dissolution, together with
other goods subsequently purchased by plaintiff, had been sold
to customers, and were marked for delivery, and that such sale
had been made by defendant Totten himself, as a clerk of the
plaintiff. That on or about the 31st day of May, 1852, without
further notice to plaintiff, all the goods of said Johnson re-
maining unsold were withdrawn by said defendant Totten,
from the store of the plaintiff, and a suit was commenced for
the recovery of the whole indebtedness of the said firm to the
said Johnson ; and plaintiff avers that such suit was instituted
at the instance of said defendant, and was prosecuted under his
directions, although in form the suit was against said defendant
Totten, as well as against the plaintiff in this suit. That the
suit was commenced by attachment of all the goods in the
store of the plaintiff, including those which had been sold after
the dissolution, and which were ready for delivery to the pur-
chasers, as before mentioned. That the said defendant Totten,
came with the officer who had the process, and directed the
seizure of the goods.

" That the plaintiff's business was interfered with and greatly
injured by this seizure of his property, and that although he
obtained a release by giving bonds, yet the giving of security
for so large an amount was an injury to his credit, and a large
absorption of his means in procuring sureties.

" Plaintiff further saith, that at the same time the said John-
son, who had thus by defendant Totten's advice come to San
Francisco, set up a store in the immediate neighborhood of
plaintiff, which plaintiff believes and avers was done at the in-

stance of defendant. That defendant publicly recommended to plaintiff's customers to go to the other store, and advised those who had been in the habit of dealing with him, and of temporarily making deposits of money, to withdraw such deposits, stating that their funds were unsafe in his hands; that he came daily in front of plaintiff's store to seek his customers in order to make these statements; and plaintiff believes, and so avers the fact to be, that said defendant Totten, designed by this course of proceedings to ruin the plaintiff, and that the effect of it was that the plaintiff's customers did withdraw their deposits, that his credit was injured, and his business declined.

"Plaintiff further saith that judgment was eventually recovered by said Johnson against Totten & Kellogg, in the suit above mentioned, for the sum of about $16,000, and was paid by said Kellogg, to which said defendant Totten, contributed nothing, and, in fact, left San Francisco during the progress of the trial and before the recovery of said judgment, and came to this State, where he has since remained, and the plaintiff was compelled to bear the whole loss of the winding up and settling the concern under the circumstances herein specified.

"Plaintiff further saith that by the issuing of the attachment, and by the proceedings of the said defendant Totten, herein set forth, plaintiff's credit was ruined, and he was compelled to settle immediately all outstanding accounts due by the firm, and to close up business relations with other concerns in the interior, and finally was broken up in his business, and that the assets of the firm were insufficient to pay its debts, so that the plaintiff incurred heavy loss.

"Plaintiff insists that the result was caused entirely by the conduct of said defendant Totten. That the agreement entered into at the time of the dissolution was violated by defendant Totten, and that he ought to pay all the damages caused thereby, or that the agreement for dissolution ought to be declared void, and the said defendant be adjudged to repay the $4,000 received by him, with interest, and to contribute to the payment of the debts of the late firm, which were paid by plaintiff after the agreement for dissolution.

"Wherefore plaintiff prays judgment for damages caused by the acts of said defendant, to the amount of $30,000, or that

the defendant repay the sum of $4,000, with interest from March, 1852, and his proportion of the debts of Totten & Kellogg paid by plaintiff, or still remaining unpaid, and of the expenses incurred by plaintiff in settling such indebtedness as shall be found due on a just accounting, and for that purpose, that an account be ordered according to the usual practice in the settlement of partnership business, and for such further or other relief as this court shall deem proper, together with the costs of this action."

When the cause came on for trial at circuit, the defendant's counsel objected that it was an equity case, and could not be tried there. Thereupon the judge ordered the complaint to be amended by striking out the prayer for equitable relief, and after a trial a verdict was rendered for the plaintiff for $7,550.

The other material facts appear in the opinion.

From the judgment entered on this verdict the defendant appealed.

*L. C. Clark*, for the appellant.

*A. H. Dana*, for the respondent.

By the Court.*—S. B. Strong, P. J.—It struck me on the argument that it was a strange suit, and that it had been strangely tried and decided. The counsel were, on the trial, very critical in their objections to the admission of a large portion of the evidence, and imposed upon the learned judge much unnecessary trouble. Many of the objections were wisely abandoned on the argument, and there were some that were warmly discussed, which seemed to me to have but little force. I cannot see the wisdom or even the propriety of thus taking up the time of the court on the trial, or encumbering the case afterwards with such trivial objections.

The plaintiff and the defendant were partners in business in San Francisco, in California. They dissolved their partnership by an instrument in writing, dated on the 1st of February, 1852. By that instrument the defendant conveyed all his right, title, and interest to or in the business of the late firm, to the plaintiff for $4,000. The sale and conveyance included all the

---

* Present, S. B. Strong, P. J., and J. A. Lott and John W. Brown, JJ.

business connections and patronage belonging to said firm. It was made a question on the trial, whether the transfer included the good-will of the firm. I think that it did. The expression "the business connections and patronage belonging to said firm" are strong to show that such must have been the intent of the parties. The original instrument was not produced in evidence, and there was some dispute between the witnesses whether the word "patronage" was inserted, but I think the evidence was sufficient to warrant the conclusion that it was. The principal witness, who swore that it was, testified that he had read the instrument so many times that he must have committed it to memory. The plaintiff obligated himself to pay all the indebtedness of the firm in San Francisco by the 1st of March then next, and for all foreign indebtedness which he engaged to pay, he was to have until the 1st day of the following July to settle, at which time he promised that they should be paid, or a discharge procured for the defendant from all liabilities. The complaint states that it was expressly understood and agreed that, as respected any indebtedness to one Johnson, the plaintiff was to have till the 1st day of July to pay it; and that the defendant stated at the time that he had a power of attorney from Johnson, which authorized him to make such agreement. If there was any such understanding or agreement, it was not reduced to writing, and the evidence to prove it was very slender and unreliable. Besides, the arrangement between the parties was committed to writing, which was signed by them, and no simultaneous oral agreement could be received in evidence to vary or add to it. The agreement that the plaintiff was to have until the 1st of July to settle all foreign indebtedness, had reference to him and the defendants, not to their creditors. The defendant could not contract for any delay as to them; certainly not as to any but Johnson. There is not sufficient evidence that Johnson's letter of attorney was broad enough to authorize the defendant to consent to the delay. If it was in as comprehensive terms as the plaintiff's witnesses suggest, it would not have sanctioned an arrangement in a matter between the constituent and the attorney and the attorney's partner. The attorney could not act for his principal, on the one side, and himself and his partner on the other; at any rate, such authority could not be inferred from general terms,

but must be strictly expressed, if its existence is claimed and allowed.

The plaintiff alleges that an attachment was issued at the suit of Johnson, against the plaintiff and defendant, and levied upon the goods in the plaintiff's store previous to the said 1st of July, 1852. That it was issued by the advice of the defendant, and that those proceedings ruined the plaintiff's credit, and eventually closed his business.

He also complains that the defendant advised some of the former customers of the firm to trade with Johnson, and others in the same business in San Francisco. It is evident, however, that there is not much in that cause of complaint, and the plaintiff's principal witnesses swore, upon their examination by his counsel, that the *attachment* broke up the plaintiff's business. There is no proof that he suffered to any great extent, if at all, from any previous diversion of his customers. The large verdict of $7,550 damages was doubtless given for the destruction of his business by the attachment, under the supposition by the jury that it was issued through the advice of the defendant.

There can be no doubt but that the defendant and Johnson were on friendly terms. Johnson had constituted the defendant his attorney. They roomed together after Johnson's arrival in San Francisco. The defendant accompanied the officer when he seized the goods under the attachment, and was a witness on the subsequent trial between Johnson and the plaintiff. Under these circumstances it was reasonable to infer that the defendant had advised the attachment. But if he had so advised, would that have subjected him to an action because the proceedings had been disastrous to the plaintiff's business? Johnson's claim was undoubtedly for money due him at the time. It should have been paid when due by the plaintiff, although the defendant had consented, so far as related to himself, that there might be a delay of payment until the 1st of July; yet that had no bearing upon the rights of the creditor, nor did it relieve the plaintiff from his obligation to pay the debt when it was due. Now, if the defendant, under these circumstances, had advised one whom he had induced to sell goods upon trust, to the firm of which he had been a member, and who had been unable to obtain payment when the money

was due, to attach goods which had belonged to the firm, and among others those which had been sold to the firm by the creditor, and which had passed from the control of the adviser into the custody and sole control of the defaulting debtor, would that have subjected the adviser to an action at the suit of such debtor, because the former had sold to the latter the good-will of the firm to which they had both belonged? It would be singular to institute such an action, and still more singular to sustain it. There are cases which decide that, when one partner has sold the good-will of their joint concern to the other, the retiring partner cannot engage in the same business, in the same vicinity; and that he will, if necessary, be enjoined from doing so. The good-will refers to both partners, and it might, and probably would, be divided, and the business of the remaining dealer in the late partnership affairs be seriously diminished by the conversion of his former associate into a rival.

But although the retiring partner would not be allowed to set up for himself a new similar establishment in the same place, yet he cannot be restrained from giving advice to a friend, which, if followed, might injure the business of the remaining partner. It is not the rule that the seller of any thing may not perform any act which may impair or defeat the arrangement of the purchaser. Thus, one who has sold any property may advise a judgment-creditor of the purchaser to levy upon it, and thereby deprive him of any beneficial enjoyment of what he had bought. The seller may expose the defects of what he has transferred to another, and thus depreciate it in the hands of the purchaser; and although such conduct would be discreditable, yet it would not subject him to an action. The purchaser of the good-will of an establishment has no greater rights than other dealers, except that the seller shall not impair the good-will by any direct action; and if he should attempt to do that, he may be restrained by an injunction. But the seller may do many things which may consequentially be equally prejudicial, without subjecting himself to an action.

The defendant's counsel objected to the admission of any evidence relative to Johnson's attachment as irrelevant; but the learned judge overruled the objection, and did not subse-

quently instruct the jury that they could not take such evidence into consideration. He decided correctly that there was no breach of any contract, but he left to the jury to infer that the defendant's conduct in advising the attachment was an infringement of the plaintiff's legal rights. In the view which I take of the case, the evidence should have been rejected; and, at all events, it furnished the jury with an illegitimate element of damages, and was the principal cause of the heavy verdict against the defendant.

The judgment, at special term, should be reversed, and there should be a new trial. The costs should abide the event of the suit.*

## JOHNSTON a. JOHNSTON.

*New York Superior Court; General Term, May,* 1863.

### NE EXEAT.—ARREST.

The writ of *ne exeat* is abolished by the Code of Procedure. The only cases in which arrest is now allowed in civil actions are provided by the Code.

Appeal from an order.

This action was brought by Joanna Johnston against Robert John Johnston, her husband, to obtain a limited divorce. The plaintiff obtained a writ of *ne exeat,* which the judge who granted it subsequently set aside; and she now appealed to the court at general term.

*Elbridge T. Gerry,* for the appellant.

*Robert Jackson,* for the respondent.

* We are informed that this decision was affirmed by the Court of Appeals, December, 1862.